# STATE OF VERMONT

## SUPERIOR COURT — ENVIRONMENTAL DIVISION

| | |
|---|---|
| In re Granville Manufacturing Co., Inc. } (Appeal by Hewett) | Docket No. 2-1-11 Vtec (Appeal from District 3 Environmental Commission determination) |

### Decision on Motion for Party Status

Appellant Dan Hewitt ("Appellant") has appealed a decision by the District 3 Environmental Commission ("District Commission") to issue a state land use permit to Granville Manufacturing Company, Inc. ("Applicant") for the extraction, screening, and crushing of stone, gravel, and sand (collectively, "aggregate") on a 55± acre parcel located near the Town of Granville. Currently before the Court is a motion by Appellant seeking party status under criteria 5 and 9(B) of § 6086 of 10 V.S.A., Chapter 151, commonly known as Act 250.

Appellant appears pro se in this appeal; Applicant is represented by Christopher J. Nordle, Esq. The Land Use Panel of the Vermont Natural Resources Board has chosen to participate in this proceeding, pursuant to 10 V.S.A. § 6085(c)(1), and is represented by Melanie Kehne, Esq. The Vermont Agency of Natural Resources has also chosen to participate in this proceeding and is represented by Donald J. Einhorn, Esq.

Only Applicant has responded to Appellant's motion, filing a response in opposition. Both Appellant and Applicant have also filed supplemental memoranda in support of or in opposition to the pending party status motion. Appellant has submitted most of his additional memoranda in conjunction with two motions seeking to introduce supplemental information in support of his motion for party status. In a separate Entry Order issued today, we granted Appellant's motions concerning these supplemental filings. As a result of that ruling, our Decision here takes into account Appellant's initial motion, Applicant's response in opposition and Appellant's initial reply, plus all of the following: (1) the additional information Appellant submitted with his two motions; (2) the subsequent response in opposition that Applicant filed; and (3) the ensuing reply memorandum that Appellant filed.

1

## Factual Background

For the sole purpose of putting the pending motion into context, we recite the following facts, which we understand to be undisputed unless otherwise noted:

1. On December 28, 2009 Applicant applied to the District Commission for a state land use permit that would provide Applicant with approval for its previous and continuing activities involving the extracting, screening, and crushing of aggregate on a 55± acre parcel located near the Town of Granville.

2. During the proceedings below and at Appellant's request, the District Commission granted Appellant preliminary party status as to criteria 1(air), 1(B), 1(D), 1(F), 4, 8, and 9(E) of Act 250, and subsequently determined that Appellant should retain such party status for all of these criteria at the end of the proceedings. In so doing, the District Commission granted final party status to Appellant on all of the criteria for which he requested it.

3. During the District Commission proceedings, Appellant did not request party status as to criteria 5 or 9(B).

4. On December 14, 2010 the District Commission issued a decision granting Applicant the requested state land use permit, subject to certain conditions that would ensure the project's compliance with each of the applicable Act 250 criteria.

5. On January 11, 2011 Appellant appealed the District Commission decision and on January 24, 2011, along with his Statement of Questions, he sought, via a motion, to be granted party status to raise issues pertaining to criteria 5 and 9(B). Appellant later sought to supplement the information he supplied with his original motion through two separate motions to introduce additional information. We granted Appellant's supplemental information motions in a separate Entry Order issued today. The following discussion addresses Appellant's motion for party status as to Act 250 criteria 5 and 9(b).

## Discussion

Appellant requests that this Court grant him party status under Act 250 criteria 5 and 9(B) in his appeal of the District Commission's decision issuing a state land use permit to Applicant for the extraction, screening, and crushing of aggregate on a 55± acre parcel located near the Town of Granville. Appellant argues that he should have party status under both of these additional criteria and thus should be able to raise issues under those criteria in this appeal. Applicant opposes the motion,

2

arguing that Appellant cannot seek party status for the first time on appeal and that, even if he could, he has not demonstrated that he has fulfilled the statutory prerequisites for securing party status under criteria 5 and 9(B).

In an Act 250 context, party status is a term of art indicating that a party falls within a defined class of persons and entities who can, among other things, secure standing to participate in the district commission proceedings and appeal the district commission determination on a permit application. See 10 V.S.A. §§ 6085(c)(1), 8504(d)(1). Persons with party status can appeal the issuance of a state land use permit, and raise issues under particular Act 250 criteria in the subsequent appeal, if they are "aggrieved person[s]," provided that they meet three additional requirements: (1) they were granted party status as to the criteria by the district commission; (2) they "participated" in the district commission proceedings; and (3) they retained party status as to the criteria at the end of the district commission proceedings. 10 V.S.A. § 8504(a), (d)(1). In other words, an "[aggrieved] person may only appeal those issues under the criteria with respect to which the person was granted [final] party status." Id.

The Vermont Legislature provided some relief from these various restrictions on who is entitled to appeal an Act 250 determination: parties who do not meet the requirements of § 8504(d)(1), but who are entitled to party status under § 6085(c)(1), can nonetheless appeal if they fall within one of the three exceptions listed in § 8504(d)(2). In the present appeal, Appellant argues he should be granted party status under criteria 5 and 9(B) pursuant to the third exception, which allows this Court to grant a request for party status and allow an appeal when "some other condition exists which would result in manifest injustice if the person's right to appeal was disallowed." 10 V.S.A. § 8504(d)(2)(C).

Before delving into our analysis of whether Appellant falls under this exception, we first note that Appellant did not strictly comply with our procedural rules regarding the submission of motions requesting party status pursuant to § 8504(d)(2). Such motions are required to be filed along with a party's notice of appeal. See V.R.E.C.P. 5(d)(2) ("An appellant who claims party status under 10 V.S.A. § 8504(b)(2), (d)(2), or (e)(2) . . . must assert that claim by motion filed with the notice of appeal."). The purpose of this policy is principally to "put the parties and the Court on clear notice of the exceptional circumstances that warrant an appeal under § 8504(d)(2)." Verizon

3

Wireless Barton Act 250 Permit, No. 6-1-09 Vtec, slip op. at 7 (Vt. Envtl. Ct. Feb. 2, 2010) (Durkin, J.).

While Appellant did not submit his motion requesting party status along with his notice of appeal, he did file such a motion shortly thereafter (within 15 days) along with his Statement of Questions. We conclude that it is within our discretion to accept Appellant's motion and take up Appellant's request for party status. See V.R.E.C.P. 5(b)(1) ("Failure of an appellant to take any [required procedural] step other than the timely filing of the notice of appeal does not affect the validity of the appeal but is ground only for such action as the court deems appropriate, which may include dismissal of the appeal."). We do not find Appellant's error fatal here because he acted quickly to remedy his omission by submitting a motion seeking party status under these additional criteria.[1] Appellant's motion put the other parties in this appeal, and the Court, on clear notice of Appellant's intentions and provided the other parties with the opportunity to respond to his motion. Cf. In re Waitsfield Public Water System Act 250 Permit, No. 33-2-10 Vtec, slip op. at 7–9 (Vt. Super. Ct. Envtl. Div. Nov. 2, 2010) (Durkin, J.) (finding that a prospective appellant had failed to preserve her right to appeal under particular Act 250 criteria due to her failure to submit a motion requesting party status under the criteria or a motion requesting an extension of time in which to do so).

Turning to Appellant's request, we now ask whether a "condition exists which would result in manifest injustice" if we do not allow Appellant to raise his arguments under criteria 5 and 9(B) for the first time in this appeal, even though he chose not to do so in the District Commission proceedings. 10 V.S.A. § 8504(d)(2)(C). Few appellants have asked the Court to apply this exception, and it appears to be a question of first impression for the Court as to how the exception applies in a situation such as this one: where an appellant who secured party status from the District Commission as to some criteria, participated in the discussion of those criteria in the proceedings below, and chose not to request party status under other Act 250 criteria (and did not receive it from the District Commission), now seeks that omitted party status for the first time on appeal.

Applicant argues that because Appellant did not request party status from the District Commission as to criteria 5 or 9(B), his current request for party status

---

[1] Applicant does not challenge Appellant's standing under Act 250 criteria 1(air), 1(B), 1(D), 1(F), 4, 8, and 9(E).

should be denied. Applicant has not provided any legal citations supporting this argument, however, and we find nothing in the statute that unconditionally forecloses a prospective appellant from requesting party status from the Court when that party has failed to request it below. Instead, § 8504(d)(2)(C) gives this Court the discretion to allow an appeal by an aggrieved person who did not receive party status below if "some other condition" is identified that would result in "manifest injustice" were party status denied in the appeal proceedings.

Our Supreme Court has stated, in reference to a subsection of § 8504 that establishes requirements for appealing decisions of municipal panels, that the "determination of party status under [10 V.S.A. § 8504(b)(2)] is discretionary . . . and this discretion is vested in the trial court." In re Verizon Wireless Barton Permit, 2010 VT 62, ¶ 19. We find this interpretation applicable to § 8504(d)(2), whose language closely aligns with that of § 8504(b)(2). Exercising this discretion, we ultimately conclude, for the reasons discussed below, that the application of § 8504(d)(2)(C) is not warranted in this instance because Appellant has failed to show that manifest injustice will result if he is not allowed to include in his appeal issues pertaining to criteria 5 and 9(B).

## I.  Is Appellant entitled to party status under criteria 5 and 9(B)?

In determining whether the exception in § 8504(d)(2)(C) is applicable here, we first assess whether Appellant has presented sufficient evidence for us to conclude that he is entitled to party status under criteria 5 and 9(B). Without such a showing, Appellant cannot invoke the exception in § 8504(d)(2), since an aggrieved person who lacks party status cannot appeal the issuance of a state land use permit. A majority of both Appellant's and Applicant's filings focus on whether Appellant has party status under criteria 5 and 9(B), but it is important to note that while being entitled to party status is a necessary pre-condition for invoking § 8504(d)(2), it is not a sufficient condition, by itself, to evidence manifest injustice and thereby warrant application of the exception.

As stated above, party status, as used here, is a term of art indicating that a party falls within the categories of persons and entities who can appeal the issuance of a state land use permit. Although Appellant does not specify the category under which he is seeking party status, it is implicit from his filings that he is seeking to qualify as a party under the final subsection, which provides that "any adjoining

5

property owner or other person who has a particularized interested protected by this chapter that may be affected by an act or decision by a district commission." 10 V.S.A. § 6085(c)(1)(E).

Appellants may qualify for party status under this subsection if they show (1) that they have a particularized interest; (2) that this interest is protected by the Act 250 criteria for which they are seeking party status; and (3) that this interest may be affected by the District Commission's issuance of the state land use permit now under appeal. See In re Pion Sand & Gravel Pit, No. 245-12-09 Vtec, slip op. at 7 (Vt. Super. Ct. Envtl. Div. July 2, 2010) (Durkin, J.). The test we apply to determine whether the interests Appellant alleges are particularized to him is the same test we apply in a standing analysis—the Court asks whether the interests alleged are specific to Appellant or are generalized concerns shared by members of the general public. See id.; In re Champlain Marina, Inc., Dock Expansion, No. 28-2-09 Vtec, slip op. at 5–7 (Vt. Envtl. Ct. July 31, 2009) (Durkin, J.). Appellant must also provide an offer of proof that shows how the particularized interests he alleges may be affected by the issuance of the state land use permit; in other words, he must refer to evidence that demonstrates a non-speculative causal connection between the proposed project and the particularized interests he claims are protected by the criteria in question. See Pion Sand & Gravel Pit, No. 245-12-09 Vtec, slip op. at 7. We therefore turn our focus to the impacts Appellant alleges and the specific legal analysis employed under criteria 5 and 9(B).

### A.     Criterion 5

Criterion 5 requires that a project "will not cause unreasonable congestion or unsafe conditions with respect to the use of highways . . . and other means of transportation existing or proposed." 10 V.S.A. § 6086(a)(5). Regarding criterion 5, Appellant argues that he owns property along Route 100, where he alleges trucks associated with the project travel, and that he is concerned that the level of the project-associated traffic will have safety, noise, dust, and aesthetic impacts on his property and affect his enjoyment of, and investment in, his property. He also alleges that there is an exit onto Route 100 from his property that cars and farm equipment use as they travel to and from his property.[2]

---

[2] From this allegation we are left to presume that Appellant believes that this intersecting traffic will be adversely impacted by the traffic from the proposed project, but he provides no specific factual allegations in this regard.

6

Appellant also expresses concern that project-associated traffic on Route 100 and the other local roads will make these transportation routes congested and unsafe for others, including cyclists, school buses, and motorists. A final reason Appellant argues he should have party status under criterion 5 is because, he asserts, the District Commission relied upon unsubstantiated and inconsistent claims by Applicant when it decided to approve the application and issue Applicant a state land use permit.

Some of Appellant's alleged interests are clear examples of generalized interests not warranting a grant of party status. These include the general concerns Appellant expresses on behalf of others for road congestion and safety and his allegations as to errors in the District Commission's analysis. Appellant fails to show how these harms, if they exist, could impact him in a manner distinct from other members of the general public.

The other traffic-related interests Appellant alleges also fall short of being sufficient to show he has a particularized interest to protect; in order for the Court to conclude that Appellant himself may be impacted in a manner particular to him, we would have to assume a number of factual allegations that Appellant neither explicitly asserts nor supports with an offer of proof. First, Appellant alleges that his property is along one of the transportation routes for project-associated traffic, Route 100, and that his property has an exit onto Route 100. However, he fails to indicate how regularly he uses this exit and section of Route 100, and he offers little factual foundation for his rejection of Applicant's representation that traffic from its project site will travel north on Route 100 and away from Appellant's property rather than towards or past his property. Cf. Pion Sand & Gravel, No. 245-12-09 Vtec, slip op. at 14 ("In determining whether party status is appropriate [under criterion 5], 'the relevant inquiry is whether the petitioner uses the roads that may be impacted by a project on a regular basis.'") (quoting Re: Pike Industries, Inc., No. 5R1415-EB, Mem. of Decision, at 2 (Vt. Envtl. Bd. Nov. 19, 2004)).

It is unclear from Appellant's filings whether there are other roads offering egress and ingress from Appellant's property. Cf. id. ("Neighbors have demonstrated that they use Route 100 on a regular basis because it provides the sole access to their property . . . ."). It is also unclear what impacts Appellant believes the project will

have on his travel on Route 100.[3] Cf. id. ("[Neighbors] have established that the daily addition of forty-five one-way heavy truck trips on Route 100 may affect safe access to their property. Further, Neighbors' expert . . . concluded . . . that the proposed . . . sight distance planned for the project's access point to Route 100 may be an inadequate stopping distance for established vehicle speeds."). Thus, Appellant fails to distinguish his interest in using Route 100 from that of the general public.

Second, Appellant asserts that his enjoyment of, and investment in, his property will be impacted by project-associated traffic. However, he does not indicate how. He refers to safety impacts without further explanation of what these impacts are and how we may conclude that they may be adverse, and his reference to dust, noise, and aesthetic impacts do not appear relevant under criterion 5 without further discussion of how they relate to the statutory triggers: "unreasonable congestion [and] unsafe conditions." 10 V.S.A. § 6086(a)(5). Without more information and evidence we are left to conclude that any traveller or property owner along the length of Route 100 where project-associated traffic may pass will face the same potential impacts Appellant now claims. Thus, Appellant has failed to show that he has a particularized interest supporting the grant of party status under criterion 5.

### B. Criterion 9(B)

Criterion 9(B) addresses primary agricultural soils and requires an applicant to demonstrate, among other things, that its proposed project "either . . . will not result in any reduction in the agricultural potential of the primary agricultural soils; or . . . will not significantly interfere with or jeopardize the continuation of agriculture . . . on adjoining lands or reduce their agricultural . . . potential." 10 V.S.A. § 6086(a)(9)(B). In relation to criterion 9(B), Appellant argues that he owns a farm abutting Applicant's property which he is currently leasing to a sheep farmer while he completes a degree program overseas. He states that he is the President of Three Owls Farm Company and maintains a license for a cheese facility in Vermont. Appellant also alleges that he has purchased hay grown on Applicant's land, that Applicant's land has been hayed recently, and that he has previously requested the ability to graze sheep on Applicant's land.

---

[3] Instead of identifying a potential impact, Appellant states that there "seems to have been no analysis of traffic impacts along truck routes" by the District Commission. (See Supplemental Information on Mot. for Party Status 4, filed Apr. 13, 2011.)

Appellant expresses concern that the proposed project, and Applicant's current unpermitted activities, have and will further limit his and other farmers' ability to farm sustainably and efficiently in this region. He states that there is not a great deal of flat agricultural land in the area, which he describes as a small, narrow valley, and that the project will create a loss in agricultural potential because it will preclude the primary agricultural soils on the project property from being used for agriculture in the future. He is concerned there will not be enough agriculturally viable land to maintain a local source of hay, corn, and vegetables or to graze animals without facing high trucking costs. He states that he has had to truck in hay and that it is expensive to do so. As with criterion 5, Appellant also argues he should have party status under criterion 9(B) because the District Commission relied upon unsubstantiated and inconsistent claims by Applicant when it decided to issue Applicant a state land use permit

Appellant has provided sufficient allegations and a sufficient offer of proof to demonstrate that he has particularized interests protected under criterion 9(B) that may be impacted by the issuance of a state land use permit to Applicant. Appellant declares a sincere interest in both the protection of primary agricultural soils on the site of the proposed project as well as the viability of agricultural operations on his own adjoining property. In an appeal where similar interests were asserted under criterion 9, this Court concluded that the appellant had made a sufficient showing of a "protectable" interest under criterion 9(B). See In re Morgan Meadows/Black Dog Realty Subdivision Act 250 Permit, No. 267-12-07 Vtec, slip op. at 7–9 (Vt. Envtl. Ct. Dec. 1, 2008) (Wright, J.).

Appellant also describes how the project might impact the interests that concern him: he asserts that development on the project site has already and will continue to reduce the amount of nearby land available for farming, particularly for growing hay and grazing animals. This impact, Appellant asserts, is particularly adverse because there is already limited agricultural land in the area. He discusses how this loss could impact his own operations by forcing him to seek more distant places to graze his animals and for sources of animal feed as well as by raising his costs for operation.

Appellant's offer of proof comes in the form of statements that the project site contains primary agricultural soil, that he has previously purchased hay grown on the

site, and that he has sought use of the site for grazing animals. He also indicates that he has trucked in hay, which he asserts is expensive. While we would prefer to see Appellant's assertions in affidavit form, rather than simply in signed memoranda, we view his statements as providing a sufficient offer of proof in regards to party status: Appellant describes specific acts he has taken, the accuracy of which is rooted in personal knowledge rather than speculation, that concretely demonstrate a causal connection between the proposed project and Appellant's alleged interests. Cf. In re RCC Atlantic, Inc., No. 163-7-08 Vtec, slip op. at 8–9 (Vt. Envtl. Ct. May 8, 2009) (Durkin, J.) (concluding that the prospective appellants had failed to provide a sufficient offer of proof in the context of requesting party status because they neglected to reference any specific evidence in the form of credible documentation or an affidavit describing a factual basis for their concerns).

We note that some of Appellant's allegations reference generalized interests that do not support a grant of party status (e.g., his allegations as to errors in the District Commission's analysis). However, because we find that his other assertions provide a sufficient showing of particularized interests that may be impacted by this project, we conclude that Appellant is entitled to party status under criterion 9(B).

To summarize, we are unable to conclude that Appellant has a particularized interest that supports his assertion that he is entitled to party status under criterion 5. While Appellant expresses concerns that appear genuine about the impact of the project-associated traffic on the safety and congestion of the local roads, he has failed to show how these impacts affect him particularly, as distinct from the general public. He has, however, shown that he has a particularized interest that supports his assertion that he is entitled to party status under criterion 9(B).

We turn now to an analysis of whether additional conditions exist that, when combined with Appellant's showing that he is entitled to party status under criterion 9(B), would create manifest justice were we to disallow Appellant from pursuing his appeal of criterion 9(B) issues.

## II. Will manifest injustice result?

Appellant asks that we exercise the discretion afforded this Court in 10 V.S.A. § 8504(d)(2)(C) to allow him to maintain his appeal under Act 250 criterion 9(B), even though he chose not to request or otherwise secure that additional party status in the proceedings before the District Commission. As discussed above, if not for the

10

exceptions found in § 8504(d)(2), Appellant's failure to secure party status as to criterion 9(B) below would definitively foreclose his right to raise issues under that criterion in his appeal. See 10 V.S.A. § 8504(d)(1)("No aggrieved person may appeal an act or decision that was made by a district commission unless the person was granted party status by the district commission . . . , participated in the proceedings before the district commission, and retained party status at the end of the district commission proceedings."). Appellant asserts that he should be permitted to raise issues under criterion 9(B) in this appeal because to do otherwise would result in "manifest injustice," triggering the exception in § 8504(d)(2)(C). For the reasons stated below, however, we conclude that Applicant has failed to present a sufficient showing to establish that such manifest injustice will occur.

"Manifest injustice" is a term used in a variety of legal discussions, but those discussions rarely provide a definition for the term, and the parties here have not offered their understanding of the definition for the term as used in § 8504(d)(2)(C). One reference source defines the term as "[a]n error in the trial court that is direct, obvious, and observable, such as a defendant's guilty plea that is involuntary or that is based on a plea agreement that the prosecution rescinds." Black's Law Dictionary, 982 (8th ed. 2004). From this reference and our review of the instances in which the term has arisen in Vermont case law, we understand that "manifest injustice" presents extraordinary circumstances where some mistake of fact or law will cause a significant harm or loss of rights to a party if not remedied. We need not rely too heavily on a particular definition, however, as the record before us reveals no circumstances that lead us to believe Appellant will face any serious injustice by not being able to raise issues under criterion 9(B) in this appeal.

Appellant's main, and perhaps sole, assertion as to why there will be manifest injustice if he is not allowed to raise arguments under criterion 9(B) appears to be that the District Commission's analysis under the criterion is faulty and that, therefore, its ruling is itself manifestly unjust. We have found no legal support for this argument. Simply because a party cannot challenge a district commission decision that the party believes has faulty factual findings or legal conclusions does not evidence manifest injustice; anyone seeking to appeal a district commission decision is asserting some fault with the decision. Were we to adopt Appellant's argument, any non-participating parties who wish to appeal from a district commission decision need only allege that

11

they disagree with the decision to make an end run around the standing requirements carefully enumerated in 10 V.S.A. § 8504(d)(1). We cannot support such a direct contradiction of the statutory provisions restricting the right to appeal to those who have secured party status and participated in the district commission's discussion of that specific Act 250 criterion. See 10 V.S.A. § 8504(d)(1).

When assessing whether there is a risk of manifest injustice here, we take into account the undisputed fact that Appellant had a full opportunity throughout the District Commission proceedings to request party status as to criterion 9(B).[4] Appellant did seek, and was granted, party status as to other Act 250 criteria—1(air), 1(B), 1(D), 1(F), 4, 8, and 9(E)—during the proceeding below; we are left to wonder why he did not also request party status as to 9(B) at that time.[5] Appellant explains that he did not do so because he felt criterion 9(B) raised a statutory issue that the Agency of Natural Resources would address and would, in doing so, "act appropriately to protect [his] rights." (See Mot. to Introduce Supplemental Information for Question 3 p. 2, filed Mar. 21, 2011). He states that he now feels the Agency failed to do so.

Appellant's explanation for his failure to request party status below does not weigh in his favor. The former Environmental Board previously concluded that even self-represented litigants are required to know that they cannot rely on other parties to represent their interests. See Re Conservation Designs, Inc., No. 5W1418-EB [#847], Mem. of Decision on Party Status, at 7 (Vt. Envtl. Bd. June 3, 2004)[6] (citing Re: Bradford B. Moore, No. 5L1423-EB, Mem. of Decision on Party Status, at 3–4 (Vt. Envtl. Bd. Apr. 27, 2004) (unpublished)). The Environmental Board decision quoted for this principal, Moore, presents procedural facts quite similar to the case at bar: two self-represented litigants pleaded with the Environmental Board to allow party status on appeal under criterion 10, even though they never sought party status below, thinking that their town would speak to their interests under that criterion. No. 5L1423-EB, Mem. of Decision on Party Status, at 3. The Board denied their party

---

[4] The Act 250 Rules provide that a district commission will make "preliminary" and "final" party status determinations during their proceedings. Act 250 Rule 14(E)(1)–(3). We are unaware of any Rule provision that forecloses a party's right to request party status during any stage of the district commission proceedings.

[5] The record before us shows no effort by Appellant to request party status under Act 250 criterion 9(B) at any stage of the District Commission proceeding. While this omission does not foreclose Appellant from being able to ask the Court to apply the exception in 10 V.S.A. § 8504(d)(2)(C) to him, as explained earlier in this Decision, we do take into account Appellant's actions during the proceedings below when determining whether manifest injustice exists.

[6] Available at http://www.nrb.state.vt.us/lup/decisions/2004/5w1418psmod.pdf.

12

status request, concluding that the parties' lack of understanding of the legal ramifications of not seeking party status below "may be unfortunate but [did] not rise to the level of substantial injustice or inequity." Id. at 3–4.

Appellant here offers no further explanation for why he should be permitted to maintain an appeal under criterion 9(B) pursuant to the "manifest injustice" provisions of 10 V.S.A. § 8504(d)(2). He provides no discussion of factual circumstances or citations to legal authority allowing us to reach such a conclusion, and our independent research has also uncovered none.

What we do know is that Appellant participated in the District Commission proceeding and was granted party status on a number of other Act 250 criteria. Thus, the record evidences that Appellant, though self-represented, understood how to request party status on certain criteria and how to participate in the Commission's discussion of those criteria.

The District Commission undertook a detailed review of the project's impacts under criterion 9(B), but Appellant chose not to seek status to participate as a party in that discussion, thereby depriving the District Commission of his input. The mere fact that the District Commission conducted a review of criterion 9(B) without Appellant's input (apparently at his choice) does not create injustice to Appellant if we prohibit him from addressing 9(B) for the first time on appeal.

Further, Appellant has made no showing that he is like the appellants in Conservation Designs who the former Environmental Board concluded could raise issues on appeal under select criteria for which they had not been formally granted party status, since they had been "in effect allowed to participate as parties" by the district commission. No. 5W1418-EB [#847], Mem. of Decision on Party Status, at 7–9, 13 (finding that appellants who could show they were entitled to party status under select Act 250 criteria could raise issues on appeal under those criteria on which they had both requested and been permitted to offer "comments" before the district commission). Here, Appellant has made no showing that he requested, or was permitted, to participate as a party in the District Commission's discussions under Act 250 criterion 9(B) despite his lack of formal party status.

For all of these reasons, we conclude that Appellant has not shown that he will face manifest injustice by not being able to raise issues under criterion 9(B) in this appeal.

13

## Conclusion

For all of the reasons more fully discussed above, we conclude that, in regards to Act 250 criterion 5, Appellant has failed to show that he is entitled to party status, and in regards to criterion 9(B), he has failed to show that "manifest injustice" will result if we disallow him from raising issues in this appeal under criterion 9(B). We therefore **DENY** Appellant's motion for party status under Act 250 criteria 5 and 9(B), and direct that he is disallowed from raising issues concerning these criteria in this appeal.

Done at Newfane, Vermont, this 1st day of July 2011.

_____
Thomas S. Durkin, Judge